In the Matter of the Estate of MARY A. CARMODY, Deceased.

Surrogate's Court, Oneida County, May 2, 1929.

*Charles G. Irish*, for the executor.

*James & Leo Coupe* [*Leo Coupe* of counsel], for Charlotte L. Carmody and others.

*Edward Bock*, special guardian, for Kathleen Giblin and others.

EVANS, S. Objections to the account were filed by residuary legatees that finally resulted in an adjustment of all disputed matters excepting certain unsold shares of stock. The testatrix at the time of her death was the owner of sixty-six shares of preferred stock and twenty-two shares of common stock in Giblin & Co., Inc., located at Utica, N. Y. The par value of this stock was $100 per share. This stock remains unsold and the contestants assert that the executor has been negligent in failing to dispose of the stock and that the account should be surcharged for the amount of its par value, $8,800.

Giblin & Co., Inc., was an old established business engaged in the manufacture and sale of heating apparatus. The executor was the treasurer of the company and owned 438 shares of common stock out of a total outstanding issue of 500 shares. The corporation and the executor recently filed petitions in bankruptcy showing large liabilities. It is conceded that the stock in question is worthless.

Giblin & Co., Inc., was what may be styled a family concern. It was originally a copartnership and the stock was practically owned by a group of relatives. The stock owned by this estate represented a loan originally made by the testatrix to the copartnership.

The executor began his duties as such on February 2, 1925. The business reverses of Giblin & Co., Inc., were not occasioned by a sudden and unexpected catastrophe. The evidence tends to prove that the downward course of the business extended over a period of years. There is no evidence of value or of a market for the sale of the stock in the sense by which such terms are commonly

understood.  During the progress of this proceeding the executor expressed the opinion that the stock was then worth in excess of $100 a share.  In view of the fact that the company a few months later was in bankruptcy the opinion of this witness was evidently based upon faith rather than facts.  There is evidence that while the executor was acting as such, stock in the corporation was sold and that about the sum of $50,000 was realized.  This stock was sold by a broker in Philadelphia at a commission of twenty-five per cent and by employing so-called high pressure salesmanship.  Some of the stock belonged to the executor personally.  This campaign merely postponed the inevitable fate of bankruptcy.  The contestants argue that the executor should have sold the stock that belonged to the Carmody estate instead of the stock in which he was personally interested.  There is no exception to the rule that the representative of an estate should give to it his undivided loyalty.  Personal considerations or self-interest should have no place in the administration of an estate.

This standard of conduct, however, does not absolve a representative from observing ordinary business ethics in his dealings with the public.  There is no rule of law that requires an executor to sell worthless stock even to increase the assets of an estate.  The act of surcharging the account of this executor would carry with it judicial sanction and approval of the stock selling campaign that resulted in gullible people parting with $50,000 for worthless paper.  Estates owning such securities should bear the loss.  It is contrary to public policy for a court to hold otherwise.  The motive that actuated the executor in this case is immaterial.  It is the act itself in this and other estates that becomes important.  The situation in this estate is not to be confused with estates owning salable securities.  A representative may or may not be chargeable with negligence in the sale or failure to sell such securities.  Each case must be largely governed by its own peculiar circumstances.

" No profit shall be made by an executor, administrator, guardian or testamentary trustee by the increase, nor shall he sustain any loss by the decrease or loss, without his fault, of any part of the estate or fund; but he shall account for such increase, and be allowed for such decrease or loss on the settlement of his accounts."  (Surrogate's Court Act, § 265.)

The purpose of this statute is to require of representatives of estates disinterested service free from personal consideration, and on the other hand such representatives assume no personal obligations for loss so long as the affairs of an estate are administered with common and ordinary business prudence.

There is no evidence that the Giblin stock was worth anything

at the time it came into the possession of the executor. The proof tends to show that it was worthless.

The legal liability of an executor, I think, cannot be based upon his success or failure to participate in the profits realized from a transaction as shown in this case.

The motion to surcharge the account is denied.

Decreed accordingly.